UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALAA KADY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 1:08-cv-1156-SEB-DML |
| | ) |
| WALEED BEG, WALLY WORLD AUTO | ) |
| SALES & SALVAGE, INC., and MASTER | ) |
| MASONRY, INC., | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendants' Motion for Summary Judgment [Docket No. 31], filed on December 30, 2009, pursuant to Federal Rule of Civil Procedure 56. Plaintiff, Alaa Kady, brings his claim against Defendants, Waleed Beg and Master Masonry, Inc. ("Master Masonry"),[1] alleging that he was employed by Defendants and that during his employment he was not paid the minimum wage or any overtime pay and that he was not paid all of the wages he was due in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Indiana Wage Statutes. For the reasons detailed in this entry, we GRANT Defendants' Motion for Summary Judgment.

---

[1] Mr. Kady also named Wally World Auto Sales & Salvage, Inc. as a defendant in this litigation. However, in his responsive briefing on this motion, he concedes that Wally World Auto Sales & Salvage should be dismissed. Accordingly, we GRANT Defendants' Motion for Summary Judgment as to Defendant Wally World Auto Sales & Salvage.

**Factual Background**

In late 2001 or early 2002, Mr. Kady began working for Waleed Beg at Wally's Auto Sales, a retail used-car business. At the time, Mr. Kady was renting a garage from Mr. Beg in order to repair cars. Mr. Beg testified by deposition that he told Mr. Kady that, if Kady sold any of Mr. Beg's vehicles while he was repairing cars in the garage, he could receive commission from the sales. Deposition of Waleed Beg ("Beg Dep.") at 31-32. Mr. Kady claims that when he first began working at the car dealership, he and Mr. Beg orally agreed that Kady would be guaranteed $1200 per month plus twenty percent commission on any sales he made.[2] Deposition of Alaa Kady ("Kady Dep.") at 32. Mr. Beg denies that he ever agreed to pay Mr. Kady a salary of $1200 per month, but agrees that Mr. Kady received a twenty percent commission on the profit from his sales.

According to Mr. Kady, he performed a variety of duties for Mr. Beg at Wally's Auto Sales, including answering phones, helping customers, repairing cars, attending auctions where the cars were purchased, and selling cars, either at auction or to customers on-site. Id. at 28-29. When a car would be purchased, repaired, and then sold, Mr. Kady would purchase the necessary parts with his own funds, direct the vehicle's repair, and

---

[2] Mr. Kady received a twenty percent commission on the profit received from the sale of each automobile after repairs, rather than twenty percent of the total sales price of the vehicle. In other words, Mr. Kady was paid twenty percent of the difference between the sales price and the cost of each automobile he sold. According to Mr. Kady, his calculated his commission on each vehicle he sold as follows: "[Y]ou put down the price the car was purchased from the auction, and if it was on a program, MFSC or whatever, we put the fees for that, and then any repair that was done to the car, then we added that to it, so that's the cost of the car, then minus the sales price of the car, then that will be the profit, then 20 percent off the profit." Kady Dep. at 45.

then calculate the commission after he was reimbursed for his expenses. Id. at 48. Mr. Kady was always responsible for calculating his own commission on each vehicle he sold. He received reimbursement for the money he spent putting fuel in the cars and purchasing parts for repair, and would also receive payment for his labor costs when he completed repairs on vehicles before they were sold. Id. at 65. When Mr. Kady sold cars on the lot he had some discretion to negotiate on the price, but he would consult Mr. Beg before discounting the price so significantly that it would result in little or no profit on a sale. Id. at 64.

Mr. Kady testified by deposition that there were also times that he bought cars with his personal funds either from the auctions, from customers at Wally's Auto Sales or from the car lot. He would then fix the vehicles and sell them himself either at auction or on the Wally's Auto Sales lot. Id. at 66-69. When Mr. Kady sold cars that he had personally purchased, he testified that he received the total amount from the sale. However, Mr. Beg testified that, although Mr. Kady never paid Beg anything for the vehicles that he (Kady) had purchased personally and then sold on the lot, he was supposed to have paid Mr. Beg fifty percent of the profit. Beg Dep. at 27-28. Mr. Beg did not limit the amount of cars Mr. Kady could purchase himself and then sell on the lot, but Mr. Kady testified that it was usually three or four at a time. Kady Dep. at 68-69.

Mr. Beg taught Mr. Kady how to do the books and write sales slips, but Mr. Kady received no other training for the job. Mr. Beg testified by deposition that Mr. Kady had no set hours and could come and go as he wished. Mr. Beg further testified that the

number of hours the car lot was open each day fluctuated, depending on when Mr. Kady or Mr. Beg would open and close the lot. Beg Dep. at 22-23. However, Mr. Kady contends that he was in the office from 9:00 a.m. until 7:00 p.m., six days a week, throughout the period that he performed work for Mr. Beg. Kady Dep. at 33, 61, 75.

According to Mr. Kady, in 2004, he began performing work for Mr. Beg's other business, Master Masonry, in addition to his work on the used car sales lot. Kady Dep. at 59. Master Masonry's office was located in the same building that housed Wally's Auto Sales. Mr. Beg testified by deposition that Master Masonry did not have set hours of operation; it was open only when there was a job scheduled. Beg Dep. at 30. Mr. Kady claims that he regularly performed basic-level tasks at Master Masonry, including answering the phone, handing out paychecks to employees, traveling to job sites, and washing bricks. Kady Dep. at 58-59. Mr. Beg, however, testified that Master Masonry did not even have its own telephone number and that customers would instead contact him on his cell phone or at home. He further testified that Mr. Kady power washed bricks only on one occasion and that he (Kady) otherwise never worked for Master Masonry. Beg Dep. at 31, 35.

From 2001 to 2005, no issues regarding Mr. Kady's compensation arose because, throughout that period, Mr. Kady earned an annual income from his commission sales that exceeded $1200 per month, the amount of Mr. Beg's alleged salary guarantee.[3]

---

[3] Mr. Kady's 1099 forms that are part of the record show that he earned the following
(continued...)

4

However, in 2005, Mr. Kady earned only $10,000 in commission for his work for Mr. Beg. In 2006, Mr. Kady's 1099 form shows that he was paid $5600 for the year, but Mr. Kady contends that he received only one check for $320 in 2006 and then a second check in 2007 also covering 2006 earnings, in the amount of $400 or $600. Id. at 36-37. According to Mr. Kady, when he began earning less than an average of $1200 per month in commissions annually, he spoke with Mr. Beg and told him that he needed at least $1200 per month to continue working, per their alleged oral agreement. Mr. Beg denies that he and Mr. Kady ever entered into such an oral agreement. On August 29, 2006, when Mr. Beg and Mr. Kady could not reach a resolution of their dispute, their working relationship ended.

Mr. Beg testified by deposition that he hired Mr. Kady as an independent contractor. Beg Dep. at 23, 32. Mr. Kady testified that he was familiar with the distinction between employees who receive W-2 tax forms and independent contractors who receive 1099 forms. Throughout the time he worked for Mr. Beg, Mr. Kady received 1099 forms at the end of each year. Mr. Kady also testified in his deposition that when he received his commission checks, he was aware that no withholdings were being made and that the amount he received was the exact amount of his commission. He did not receive worker's compensation benefits, health insurance, a 401K plan, retirement

---

[3](...continued)
amounts from 2003 through 2006: $41,187.00 in 2003; $15,665.71 in 2004; $10,058.67 in 2005; and $5,619.10 in 2006. Wally's Auto Sales is listed as the Payer on the 2003 form and Master Masonry is listed as the Payer on the 2004, 2005, and 2006 forms.

benefits or any other benefits beyond the commission. Kady Dep. at 56-57.

On August 28, 2008, Mr. Kady filed his Complaint, alleging that he was employed by Mr. Beg and that during his employment he was not paid the minimum wage or any overtime pay, that he was not paid on a regular schedule, and that he was not paid all of the wages he was due, in violation of both the FLSA and the Indiana Wage Statute. Defendants rejoin that Mr. Kady was at all relevant times an independent contractor, not an employee, and thus, not entitled to minimum wage, overtime, and other protections of the federal and state laws. Additionally, Defendants argue that Mr. Kady's claims are barred by the applicable two-year statute of limitations and the Indiana statute of frauds.

## Legal Analysis

**I.     Standard of Review**

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the

parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at

7

323.

A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

II. **Plaintiff's Employment Status Under the FLSA**

Mr. Kady contends that Defendants violated §§ 206 and 207 of the FLSA, which require employers to pay their employees a minimum wage, limit the number of hours employees can work, and provide for certain overtime payment requirements. 29 U.S.C. §§ 206-207. Defendants rejoin that Mr. Kady was not an employee, but merely an independent contractor. It is undisputed that these provisions of the FLSA do not apply unless there exists a valid employer-employee relationship. Secretary of Labor, U.S. Dep't of Labor v. Lauritzen, 835 F.2d 1529, 1531 (7th Cir. 1987). In other words, employees are covered by the statute, but independent contractors are not. Id. Whether a worker is an employee or an independent contractor is a legal rather than a factual question. Harper v. Wilson, 302 F. Supp. 2d 873, 878 (N.D. Ill. 2004) (citing Karr v. Strong Detective Agency, Inc., 787 F.2d 1205, 1206 (7th Cir. 1986)).

When determining whether an individual is an employee or an independent contractor under the FLSA, courts apply a six-factor test to determine the "economic

reality" of the situation. Estate of Suskovich v. Anthem Health Plans of Virginia, Inc., 553 F.3d 559, 565 (7th Cir. 2009) (citing Lauritzen, 835 F.2d at 1534). Under this test, "employees are those who as a matter of economic reality are dependent upon the business to which they render service." Laurtizen, 835 F.2d at 1534 (quoting Bartels v. Birmingham, 332 U.S. 126, 130 (1947)). In determining whether an individual is an employee, the court does not look to one isolated factor, but to the totality of the individual's work activity. Id. at 1534 (citations omitted). In the Seventh Circuit, courts look to the following six factors:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
>
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
>
> (4) whether the service rendered requires a special skill;
>
> (5) the degree of permanency and duration of the working relationship; and
>
> (6) the extent to which the service rendered is an integral part of the alleged employer's business.

Id. at 1535 (citations omitted).

It is clear that several of these factors weigh in Defendants' favor. For example, it is undisputed that Mr. Kady was compensated solely through a twenty percent commission of the profits obtained from his sales, and thus, clearly had the opportunity to increase his profits based on his own management skills, judgment, and initiative.

Because on some occasions he personally bought and repaired vehicles that he later sold on the car lot, Mr. Kady also assumed a corresponding risk that he could lose a personal investment if his repair and sales skills were not up to par. Though Mr. Kady did not employ any of his own workers, he did often pay for expenses up front, such as gas and necessary repair parts for the vehicles. He was later reimbursed by Mr. Beg for the parts for the vehicles purchased by Mr. Beg and Wally's Auto Sales, but Mr. Kady personally invested in all of the materials and repair parts for the vehicles he purchased himself and then sold on the lot. Most importantly, Mr. Kady had complete control over the sales techniques that he utilized to make sales. He received no sales training from Mr. Beg nor was he (Kady) required to use any specific company sales pitch or strategy. Although Mr. Kady contends that he was at work every day from 9:00 a.m. to 7:00 p.m., he did not testify that such hours were required by Mr. Beg. Mr. Beg testified that Mr. Kady was free to come and go as he pleased from the car lot.

The only facts supporting the characterization of Mr. Kady as an employee of Wally's Auto Sales are, first, that the working relationship between Kady and Mr. Beg lasted for several years, and thus was not of a temporary nature, and, second, that the sales of vehicles at a used car lot is a primary function of an auto dealership. Considering only these facts, the scale clearly weighs in favor of a finding that Mr. Kady was an independent contractor. However, Mr. Kady contends that there is a significant dispute between the parties regarding whether, in addition to his duties at the car lot, Mr. Kady also worked for Mr. Beg at Master Masonry and the extent of his responsibilities there.

According to Mr. Kady, he regularly performed low-level tasks for Mr. Beg at Master Masonry that were related to the day-to-day operations of the business, such as answering phones, washing bricks, and distributing paychecks. However, as Defendants point out, there is a complete absence of documentary evidence in the record to substantiate these claims. Mr. Beg denies that Mr. Kady performed any such tasks for Master Masonry, save one occasion on which Kady washed bricks at a job site. The evidence adduced from the record establishes that Master Masonry did not have its own telephone line and did not have regular business hours. Accordingly, even viewing the facts in the light most favorable to Mr. Kady, as we are required to do at this point, any work performed by Mr. Kady at Master Masonry would have been infrequent and minimal, and thus, insufficient to tip the scale in favor of a finding that Mr. Kady was Defendants' employee. Similarly, there is a dearth of evidence to establish that Mr. Kady was hired, trained, supervised or regulated as an employee by Mr. Beg acting on behalf of Master Masonry. Mr. Kady's tasks, such as they were, were performed on an episodic, random, and seemingly spontaneous basis.

**III.     Statute of Limitations for Actions Brought Pursuant to the FLSA**

Even if Mr. Kady could prove that he was an employee, his claims brought pursuant to the FLSA would nonetheless be barred by the applicable statute of limitations. It is undisputed that FLSA claims must be brought within two years, unless the defendant's conduct can be shown to be willful, in which case the limitations period is

three years.  See 29 U.S.C. § 255(a).  The FLSA presumes a two-year statute of limitations unless an employee can show that the employer acted willfully.  See Bankston v. State of Ill., 60 F.3d 1249, 1253 (7th Cir. 1995) (citing Walton v. United Consumers Club, Inc., 786 F.2d 303, 308 (1986)).  An employer acts willfully, for purposes of establishing the proper statute of limitations, where he either knows or shows reckless disregard for whether his actions are unlawful under the FLSA.  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).  "'If an employee acts unreasonably, but not recklessly, in determining its legal obligation,' then its action cannot be considered willful."  E.E.O.C. v. O'Grady, 857 F.2d 383, 388 (7th Cir. 1988) (citing id. at 1682 n.13).

Mr. Kady's basis for asserting willfulness is that Mr. Beg "withheld nothing from [Kady's] wages" and "never paid Kady any regular wages," and thus, "blatantly violated the FLSA."  Pl.'s Resp. at 9.  However, the standard for establishing willfulness for purposes of the FLSA is not whether the actions in question were willful, but instead whether the actions were done either with knowledge that they violated the FLSA or with reckless indifference as to whether they violated the statute.  Here, Mr. Kady has failed to submit any evidence that Mr. Beg had actual knowledge of an FLSA violation.  Therefore, the only question is whether Mr. Beg acted recklessly with regard to whether his actions violated the FLSA.  Mr. Kady has not made such a showing.  Defendants have consistently argued throughout this litigation that Mr. Beg believed that Mr. Kady was an independent contractor not subject to the FLSA and that Beg treated Kady as such.  On

the factual record before us, we cannot conclude that Defendants "recklessly disregarded" their obligations under the FLSA. Accordingly, we hold that the two-year statute of limitations applicable to "ordinary" violations of the FLSA applies here.

Mr. Kady filed his Complaint in this action on August 28, 2008, and thus, any claims accruing before August 28, 2006, are time-barred. Because Mr. Kady stopped working for Defendants on August 29, 2006, and has failed to establish that any FLSA violations occurred on August 28, 2006 or August 29, 2006, the only two days he worked for Mr. Beg within the limitations period, his FLSA claims are time-barred, regardless of his employment status.

## IV. Statute of Limitations for Actions Brought Pursuant to the Indiana Wage Statutes

Similarly, regardless of Mr. Kady's employment status under Indiana law, the applicable statute of limitations bars Mr. Kady's state law claims. A two-year limitations period applies to claims brought pursuant to Indiana Wage Statutes. IND. CODE § 34-11-2-1 ("An action relating to the terms, conditions, and privileges of employment except actions based upon a written contract (including, but not limited to, hiring or the failure to hire, suspension, discharge, discipline, promotion, demotion, retirement, wages, or salary) must be brought within two (2) years of the date of the act or omission complained of."); see also Lemon v. Wishard Health Servs., 902 N.E.2d 297, 302 (Ind. Ct. App. 2009) ("[A] two-year statute of limitations applies to claims made under the Wage Claims Act.").

13

As discussed above, Mr. Kady filed his Complaint in this action on August 28, 2008, and thus, any claims accruing before August 28, 2006, are time-barred. Because Mr. Kady stopped working for Defendants on August 29, 2006, Kady's state law claims are time-barred, as Kady has failed to establish that he was not properly compensated for any work completed on August 28, 2006 or August 29, 2006, the only two days he worked for Mr. Beg within the limitations period.[4]

**V.   Conclusion**

For the reasons detailed in this entry, we <u>GRANT</u> Defendants' Motion for Summary Judgment.  Final judgment shall be entered accordingly.

IT IS SO ORDERED.

Date:   06/02/2010

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[4] Mr. Kady argues that a three-year statute of limitations applies to his minimum wage and overtime claims brought under the Indiana Wage Statutes.  However, under Indiana law, "claims for overtime compensation cannot be raised under the Wage Law" because "the [FLSA] is the exclusive remedy for enforcing rights created under that federal statute." <u>Parker v. Schilli Transp.</u>, 686 N.E.2d 845, 851 (Ind. Ct. App. 1997).

Copies to:

Christopher Kenneth Starkey
starkeyck@msn.com

Andrew P. Wirick
HUME SMITH GEDDES GREEN & SIMMONS
awirick@humesmith.com